1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

BGC INC.,

Case No.   22-cv-01582-JSW

8

Plaintiff,

9

v.

10

RAUHMEL FOX ROBINSON, et al.,

11

Defendants.

**ORDER GRANTING, IN PART, AND
DENYING, IN PART, MOTION TO
DISMISS, WITH LEAVE TO AMEND
AND SETTING CASE MANAGEMENT
CONFERNCE**

Re: Dkt. No. 25

12
13

This matter comes before the Court upon consideration of the motion to dismiss filed by

14

Defendants, Rauhmel Fox Robinson ("Mr. Robinson") and Black Girls Code, Inc. ("BG Code")

15

(collectively "Defendants").  The Court has considered the parties' papers, relevant legal

16

authority, and the record in this case, and it finds the motion suitable for disposition without oral

17

argument.[1]  The Court VACATES the hearing on this motion.  Plaintiff's motion for a preliminary

18

injunction remains on calendar pending further Order of the Court.

19

For the reasons that follow, the Court HEREBY GRANTS, IN PART, AND DENIES, IN

20

PART, Defendants' motion.

21

**BACKGROUND**

22

Plaintiff BGC, Inc. ("BGC"), which was previously incorporated under the name "Black

23

Girls Code Inc.", is a non-profit organization founded to advance equal representation for Black

24

25

[1]     The parties submitted requests for judicial notice to support their positions, which include
documents submitted to the United States Patent and Trademark Office or other public records.

26

(*See* Dkt. Nos. 26, 30, 32.)  The parties do not object to the requests for judicial notice, and the
documents are the type of material of which the Court can take judicial notice.  Accordingly, the

27

Court GRANTS each request, will not take judicial notice of any disputed facts in those
documents, and will identify the exhibits on which it has relied in the background discussion and

28

the analysis.

United States District Court
Northern District of California

women in the technology sector."  The organization was founded by Kimberly Bryant.  (Compl. ¶¶ 1-2, Exs. 4-5.)  To advance its goals, BGC offers one day workshops, enrichment activities, summer camps, and code clubs, which take place throughout the year and are led by tech professionals and influencers.  BGC alleges it is the owner of U.S. Federal Trademark Registration No. 6,145,379, which covers the Mark in connection charitable fundraising, education services, and charitable services.  (*Id.* ¶ 25, Ex. 1 ("Registration"), Exs. 4-5.)

Black Girls Code Inc.'s corporate registration briefly lapsed in late 2021.  (Compl. ¶ 2; *see also* Defendants' Request for Judicial Notice ("Def. RJN"), Ex. 7.)  On January 11, 2022, Mr. Robinson registered BG Code as an exempt organization with the Delaware Department of State and then registered it to do business in California.  (Compl. ¶ 28, Ex. 2; Def. RJN, Exs. 1-3.)  As a result, BGC was not able to renew its lapsed corporate registration under its original name and renewed its registration under "BGC, Inc."  (Compl. ¶¶ 2, 28; *see also id.* at 6 n.1, Def. RJN, Ex. 8.)

BGC alleges Defendants are using the Mark in full and without alteration on their website, advertising, and social media for the same services that BGC provides.  BGC also alleges Defendants "are deceptively trying to lead consumers to believe that" BG Code is BGC, that BG Code has taken over BGC and its business, and that Mr. Robinson is BGC's new leadership.  (*See id.* ¶¶ 29-38.)  According to BGC, Defendants also have contacted BGC's business partners, such as donorbox, and are claiming BGC no longer has the right to use the Mark.  (*Id.* ¶ 39.)

Based on these and other allegations the Court will address as necessary in the analysis, BGC asserts claims against Defendants for: (1) trademark infringement under the Lanham Act, 15 U.S.C. section 1114; (2) unfair competition and false designation of origin, under the Lanham Act, 15 U.S.C. section 1125; (3) common law trademark infringement; (4) violations of California Business and Professions Code sections 17200, *et seq.* (the "UCL claim"); and (5) tortious interference with business relationships.

## ANALYSIS

### A.    Applicable Legal Standards.

Defendants argue that BGC's allegations are insufficient to show it has statutory standing

United States District Court
Northern District of California

1    to sue because it fails to properly allege an ownership or other interest in the Mark.  They also

2    argue that BGC fails to allege sufficient facts to show Mr. Robinson is the alter-ego of BG Code

3    or that Defendants intentionally interfered with BGC's business relationships.  A motion to

4    dismiss for lack of statutory standing is subject to the standards of Federal Rule 12(b)(6).  *See,*

5    *e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).[2]

6         A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim

7    upon which relief can be granted.  In general, a court's "inquiry is limited to the allegations in the

8    complaint, which are accepted as true and construed in the light most favorable to the plaintiff."

9    *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  However, a court may consider

10   documents that are subject to judicial notice on a motion to dismiss without converting the motion

11   to one for summary judgment.  *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.

12   1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104

13   (1991).

14        Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

15   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

16   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

17   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265,

18   286 (1986)).  Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable

19   but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at

20   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

21   to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

22   *v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

23        If the allegations are insufficient to state a claim, a court should grant leave to amend,

24   unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

25   Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th

26

27   _____

    [2]     In contrast, a motion to dismiss for lack of Article III standing is subject to the standards of
28   Rule 12(b)(1).  *Maya*, 658 F.3d at 1067.  Defendants do not challenge BGC's allegations of
    Article III standing.

1    Cir. 1990).

2    **B.     The Court Denies the Motion to Dismiss the Claims Against Mr. Robinson.**

3           Mr. Robinson moves to dismiss all of the claims asserted against him on the basis that

4    BGC's allegations of alter-ego liability are not sufficient.  In its opposition, BGC argues that

5    although it included alter-ego allegations, Mr. Robinson also is liable as an individual based on his

6    participation in the alleged infringement.  "A corporate officer or director is, in general, personally

7    liable for all torts which he authorizes or directs or in which he participates, notwithstanding that

8    he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajaj*

9    *Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985); *accord Comm. for Idaho's High*

10   *Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (in claim for trademark infringement, stating

11   that "[a] corporate officer or director is, in general, personally liable for all torts which he

12   authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the

13   corporation and not on his own behalf" and concluding district court erred in dismissing claims

14   against individual defendants).

15          BGC alleges Mr. Robinson has engaged in infringing activities on his Twitter account.

16   (Compl. ¶¶ 9-14, 30, 32. 36.)  One of the messages depicted in the Complaint includes the

17   following statement: "My goal is to train 10,000 iOS app devs."  (*See id.* ¶ 34.)  Although that

18   message is on BG Code's Twitter account, at this stage of the litigation, it is reasonable to infer

19   that statement comes from Mr. Robinson.  Other messages depicted in the Complaint direct that

20   email inquiries should be sent to ceo@blackgirlscodeinc.org, and Mr. Robinson does not dispute

21   that he is the CEO of BG Code.  (*Id.* ¶ 37; *see also* Compl., Ex. 14 (Twitter post stating Mr.

22   Robinson "is training 10,000 volunteer iOS developers to code iOS mobile applications for Black

23   Girls Code Inc.").)

24          The Court concludes BGC has alleged sufficient facts to allege that Mr. Robinson could be

25   held individually liable without relying on the alter-ego allegations.  Accordingly, the Court

26   DENIES, IN PART, the motion on this basis.

27   //

28   //

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**C.     BGC Alleges Sufficient Facts to Show Standing to Sue for Trademark Infringement.[3]**

Defendants argue BGC fails to allege facts to show it has standing to pursue its Lanham

Act and UCL claims because it fails to show ownership or enforceable rights in the Mark.  In

particular, Defendants argue that the Registration shows the owner of the Mark is lists "Black

Girls Code (California Corporation), 1736 Franklin Street, 10th Floor, Oakland, California 94612."

BGC may establish statutory standing by alleging facts showing that it is "(1) the owner of

a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a

cognizable interest in the allegedly infringed trademark.";  *Wood v. Apodaca*, 375 F. Supp. 2d 942,

947-48 (N.D. Cal. 2005) (citing *Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th

Cir. 1979)) (addressing elements of common law trademark claim).  "It is axiomatic in trademark

law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC, Int'l Ltd.*,

96 F.3d 1217, 1219 (9th Cir. 1996).  The Lanham Act gives a "registrant" standing, and BGC

alleges it is the owner of the Registration, which generally serves as *prima facie* evidence of

ownership.  *Id.*; *see also* 15 U.S.C. §§ 1057(b), 1115(a).  The Lanham Act defines the term

"registrant" to "embrace the legal representatives, predecessors, successors and assigns of such

applicant or registrant." 15 U.S.C. § 1127.

According to the record currently before the Court, Black Girls Code Inc. filed Articles of

Incorporation on March 2, 2012 ("3/2/12 Articles") and was assigned the corporate identifier

3458407.  (Def. RJN, Ex. 10.)  On March 23, 2012, Black Girls Code Inc. filed another set of

Articles of Incorporation and was assigned the corporate identifier 3453990 ("3/23/12 Articles").

(*Id.*, Ex. 6.)  The only difference between the two sets of Articles is Article II B., which sets forth

the purpose of the corporation.  The earlier articles reference providing care to abused animals,

whereas the later Articles state that the purpose of the corporation is to provide technical education

and training in Computer programming and technology.  (*Compare* 3/2/12 Articles, Art. II.B. *with*

3/23/12 Articles, Art. II.B.)  Based on those facts, it is reasonable to infer that the two corporate

---

[3]     BGC's UCL claim derives from and is dependent upon its claims for trademark
infringement.  Accordingly, this analysis applies to BGC's first four claims for relief.

1    identifiers are associated with a single corporation.

2         Defendants do not dispute that BGC is the successor corporation to Black Girls Code Inc.,

3    which the record also shows share the same mailing and principal addresses.  Those are the

4    addresses used when the Mark was registered.  (*See* BGC RJN, Exs. 1-2, 6-10.)  In reply,

5    Defendants argue that BGC admitted in a filing with the USPTO that "[t]he entity initially

6    identified as Black Girls Code, a California corporation, did not exist as a legal entity on the

7    application date."  (Defendants Supplemental RJN, Ex. A at ECF p. 5.)  That statement is set forth

8    in BGC's application to the USPTO to correct the name on the Registration.  Immediately prior to

9    the purported admission, BGC also stated that "[t]he original applicant name was inadvertently

10   entered without the INC.  In other words, the name of the applicant in the original applicant was

11   entered as Black Girls Code, a California corporation.  The applicant name should have read as

12   Black Girls Code, Inc., a California corporation.  Since otherwise, the original information for the

13   applicant was correctly entered, identifying it as a California corporation, it is believed this request

14   is acceptable."  (*Id.* at ECF pp. 4-5.)

15        The Court concludes that BGC has sufficiently alleged it has statutory standing to bring its

16   claims.  *See, e.g., AECOM Energy and Construction, Inc. v. Morrison Knudson Corp.*, 851 Fed.

17   Appx. 20, 21 (9th Cir. 2021) (holding plaintiff had standing where record demonstrated it original

18   entity owning the mark became plaintiff through various name changes).

19   **D.    The Court Dismisses the Tortious Interference Claim, With Leave to Amend.**

20        BGC also asserts a claim for tortious interference with business relationships.  In order to

21   state a claim, BGC must allege facts showing: "(1) an economic relationship between the plaintiff

22   and some third party, with the probability of future economic benefit to the plaintiff; (2) the

23   defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

24   designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

25   harm to the plaintiff proximately caused by the acts of the defendant."  *Korea Supply Co. v.

26   Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (internal quotations and citations omitted).

27        The only specific third party referenced in the Complaint is donorbox.  BGC alleges that

28   donorbox believes BGC no longer has the right to use the Mark on website, but BGC does not

United States District Court
Northern District of California

6

allege that it has been unable to use donorbox or that it has become more costly or burdensome to do so.  (*See* Compl. ¶¶ 39, 73-75.)  The Court concludes BGC's allegations are not sufficient to plead the fourth and fifth elements of this claim, and it GRANTS, IN PART, the motion to dismiss.  Because it does not appear futile, the Court GRANTS BGC leave to amend this claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion to dismiss.  If BGC chooses to amend its claim for tortious interference, it shall file an amended complaint by no later than July 29, 2022.  The parties shall appear for an initial case management conference on August 12, 2022, and the parties' joint case management conference statement shall be due by August 5, 2022.

**IT IS SO ORDERED**.

Dated: June 30, 2022

_____
JEFFREY S. WHITE
United States District Judge